Good morning, Your Honors. May it please the Court, my name is Josephine Mason, pro bono student counsel for the appellant Stephen Matza, and I am present with my student co-counsel Gabriel McWhirter. The Truth in Lending Act creates a binding obligation on servicers to respond to borrower's requests for information. The only question is, when a servicer like Countrywide breaches its statutory duty, whether the borrower has a remedy, or whether the Truth in Lending Act may be violated with impunity. I guess I have a question right off the bat, Ms. Mason. How does Countrywide meet the definition of creditor under AKILA? Countrywide provides credit generally, but with regard to this particular case, and to step back for a moment, this would be for Mr. Matza's claim under the express private right of action under section 1640A. And Countrywide, Mr. Matza has pleaded that Countrywide was a creditor by agreement because Countrywide allegedly acquired the interest in the loan prior to Mr. Matza's even signing the loan. I understand that, but in this particular case, the creditor is defined in 1602F, and when you read that, I guess I'm having some difficulty understanding how Countrywide fits into that, because you even acknowledge in your pleadings that Countrywide is not listed on the mortgage or the note. You may disagree with the way Congress wrote this, but don't you have a problem with that section? Your Honor, it would have to be essentially an equitable signing of that. You want us to equitably rewrite the statute. Our court has been accused of doing that, I know. But in this case, that's what we'd be doing, wouldn't we? Your Honor, yes. With regard to the creditor issue, because Countrywide would have, as written, Countrywide would have the potential to essentially circumvent the requirements of the Truth in the Loan Act by acquiring the loan before it's even signed. So they would be the sort of actual owner. But even if this Court were to find that that was not a plausible reading of the statute. With regard to the express private rights of action. So do you agree that under an express right of action for a violation of Section F, that they would have to be a creditor? Countrywide would have to be a creditor. No. Actually, with regard to the Countrywide should also be held liable if it is an affinee as well as a creditor. Under the persuasive reasoning, this is not an issue that has been addressed by the Circuit Courts. But under the persuasive reasoning of the Northern District Consumer Solutions v. Hillary, where that Court held that an affinee can be held liable for its own intentional violation of Section 1641F2, because the proviso in Section 1641 that states that, which I think Your Honor is referring to, affinees can only be inherited from the creditors, that only refers to disclosure violations. Or it should be read to only apply to disclosure violations. Otherwise, affinees would be free to violate the Truth in Lending Act, that express requirement that's imposed on affinees. Let's just say hypothetically that the Court doesn't find that persuasive, despite the wisdom of the District Court. What right would we have, for example, to send this back to the District Court, based upon its purportedly erroneous ruling on the time-barred nature of this, and say, you know, give these folks a chance to amend and look at the Real Estate Settlement Procedures Act, where there is a possible remedy. Would we have the right to do that? Certainly, Your Honor. What would be the precedent for that? The Supreme Court case of Moses H. Cone v. Mercury Constable Corporation does allow appellate courts to decide issues of law that are raised in the first instance, if it would not prejudice the parties, and if they are indeed pure issues of law. With regard to the right to amend, importantly, Mr. Motts had never got even one chance to amend his complaint. Was he pursuing a RESPA claim? I know he had a pro se complaint, which we can read very broadly, but was he pursuing a RESPA claim? Your Honor, no. He did not use the words RESPA. He did not cite to RESPA. He only cited to the Truth in Lending Act. But he did plead, arguably, a cause of action under RESPA. And so, the fact that he did plead in the complaint should give rise, at a minimum, to a RESPA complaint. Counsel, did he assert state law claims that were supplemental to his federal TILA claim? Yes, Your Honor. Mr. Motts asserted the tortious breach of the implied warranty of good faith and fair dealing, as well as taking issue with it. So, if we were, just for sake of analysis, I'm not saying this is what we would do, but if we end up rejecting the TILA claim, and if we feel we can't address RESPA because it wasn't in the pleading, would it be discretion of the trial court, whether it goes, whether it retains supplemental jurisdiction over state law claims, or whether, if it wants to, it could remand to the state court, or dismiss without prejudice to the claims being brought in state court? I believe it would be within the discretion of the district court. But, in addition, there would be outstanding factual issues as to the amount in controversy, as well as the true diversity status of the parties, the citizenship of the corporations. And so it would require further discovery, I think, in the district court. Was diversity alleged? Yes, Your Honor, it was. But I would like, for a moment, to turn back to the merits of the Truth in Lending Act issue, because, as Your Honor alluded, there is potentially a RESPA claim available here, but it would not be broad enough to include a lot of the claims that would be available under an implied private right of action under the TILA, Section 1641F2. That doesn't really change the fact, though, that if Congress didn't draft this broadly enough for you to be covered, despite the desirability of the remedies, that doesn't really help you, does it, counsel? Yes, Your Honor, because under the four factors that the Supreme Court identified in Court v. Ash, all those factors do weigh in favor of finding an implied private right of action under Section 1641F2. But Your Honor, as you know, implied rights of action are strongly discouraged by the Supreme Court, and they really have to fit within what we can legitimately construe as the intent of Congress and a few other factors. But in this case, if we find that your TILA complaint just doesn't work, not because it's time-barred, but because Countrywide simply is not a creditor, and Congress decided, for whatever reason, that it wasn't going to make it broad enough, we can't imply not only – we're not only – you're not only asking us to imply a right of action, but to basically rewrite the Act to include people that weren't covered before. How can we do that? Your Honor, I think the third court factor, as well as the second, are dispositive here. Because the third court factor, which is what Congress intended in terms of the purpose and overall structure of the statute, really weigh in favor of there being an implied private right of action. But how do you – how do we tell what Congress intended? I'm speaking for Justice Scalia here. Yes, Your Honor. Two responses to that. First, the purpose of the section within the overall purpose and scheme of TILA, of Section 1641F2, is extremely important, not only in keeping borrowers appraised of what's happening with their note, but also in asserting certain important legal rights. Servicers are often the sole point of contact between the borrower and the other entities that are involved in the servicing of the loan, most importantly the owner of the loan. The most important right, which is not at issue here, but it is important as to the purpose of this section in the overall scheme of the statute, is the right of rescission. As this Court has held previously – Let me interrupt you here. It's common knowledge that there are hundreds of thousands of people across the country who are in a situation somewhat like what your client is. And Congress has been besieged with complaints and concerns, and yet, as far as I know, and I'm hoping you're going to correct me on this, there are no appellate cases from a federal appellate court that says that TILA applies in this situation. And yet, Congress has not amended the law, nor to the best of my knowledge has there ever been a hearing held for the purpose of doing so. Do you know anything to the contrary? Well, in fact, Your Honor, in the 2009 amendments to TILA, Congress did address an issue similar to this, although it did not ultimately rectify the particular gap that we have here. That's what I'm referring to. I'm not saying that it never meant TILA, but I'm saying, given your concern – where's the note, who's servicing this and all that sort of thing, which is extremely common – Congress hasn't done anything about it, has it? No, Your Honor. However – And where you're asking us to imply a right of action, how can we do that? I mean, one of the differences between constitutional litigation and statutory litigation is that if the Congress thinks the court's got it wrong, they can just amend the law and correct our errors. They can do that with the Constitution. Here, nobody's found that there is a right of action. If they think, boy, those darn courts, they're just not – they're not doing what we intended. But we're going to make it clear. We're going to amend this statute. But nobody has done that. What should we draw from that, if anything? Well, first of all, Your Honor, this is a case of first impression. The – the circuits have not held against us on this issue. They just simply haven't had it, probably because the mortgage crisis occurred in 2008 and the cases are just now percolating up to the circuit level. But with regard to Congress's intent, our position is that Congress always intended, since the inception of this provision in 1995, always intended for this provision to be actionable. And so, first of all – What does that mean? For a borrower to be able to sue for enforcement of Section 1641F2 and potentially to get damages if they're injured by the servicer's failure. Again, it's a creditor. No question about that. I mean, we've already discussed the fact that it doesn't appear that Countrywide is a creditor. Certainly, Your Honor. But assuming arguendo, that Countrywide is only a servicer, this Court should still find an implied private right of action because, as this Court held in Miguel v. Country Funding Corporation, the right of rescission may only be asserted against – the extended right of rescission, the three-year period, may only be asserted against the actual owner of the loan. But wouldn't that go against the express right in Section 1640A, which specifically says creditor? We may agree with everything you say about there should be – they may not have a cause of action if not, but wouldn't that go directly against the statute? No, Your Honor. And importantly, the Supreme Court, and other courts as well, have distinguished with regard to that expressio unius exclusio alterius argument when there's a very – there's a significant difference in application when it's – there are expressed private rights of action in the statute versus express – there are only public rights of – public rights available in the statute. And so even as Court v. Ash and Cannon v. the University of Chicago have expressly rejected the argument that if there's an express private right of action, it should weigh against an implied private right of action because Congress intended to provide private rights of action for violations of any provision of the Truth in Lending Act as opposed to merely public enforcement via an administrative agency. Don't you think – Go ahead. Do you think Congress would do that with its 2009 amendment if that's what they intended? Possibly, Your Honor. And they may have even intended to do that. But that doesn't – and even if they failed in 2009, it doesn't mean that they didn't always intend to do it from 1995. You realize if we do what you want, there'll be a lot of well-paid lobbyists that will be very upset with you, and us. That's a – Would you like to reserve some of your time for rebuttal? I would, Your Honor. Thank you very much. Very good. Why don't we do that and let's hear from Countrywide. Good morning, Your Honors. Ariel Stern on behalf of Countrywide as well as the other appellants, Recon Trust, and MERS here. The Court should affirm the dismissal below for two reasons. First, as the Court has already noted, Countrywide was not a creditor under TILA at the time or ever. And secondly, there was no private right of action expressed or implied under 1641-F2 in July and August of 2008, which is when the alleged violations occurred. Mr. Stern, the District Court, one of its conclusions was that the TILA claim was time barred. But at least as I calculated, it really wasn't. If we're correct about that, would we have the right to – since this is a pro se situation and we're supposed to liberally construe this on an important issue, would we have the right to reverse and remand to the District Court mentioning that there should be an opportunity on the part of Mr. Mazza to amend his complaint? We wouldn't need to say anything about RESPA because I think he already knows about that. But would that be a proper remedy? I don't think so, Your Honor. And we agree that the – and have not contested the correctness of the application of the statute of limitations. It probably was not time barred. However, this Court should nevertheless affirm the decision because it was correct. And under many cases, it's almost black letter standard that the appellate court has the ability to affirm a decision that was correct even if it's not for the reason stated by the District Court as long as that reason is supported on the record. We could do that. But could we also construe TILA and conclude that this – be covered on this because it's not a creditor but yet because it's a pro se litigant that that would be given another crack at it? How about that? Do you like that Solomon-like decision? Well, it's – the problem with Solomonic decisions, I suppose, is that they – if you end up splitting the baby, in this particular case, it would probably do so in a manner that just does not advance any interest on the part of the expeditious resolution of the claim. It certainly wouldn't advance Countrywide's position, would it? It would not, Your Honor, admittedly, but it would also not advance Mr. Amat's position because the claim is – he has no claim. There was no private right of action whether we look at it from the express analysis, which his able counsel is trying to present now. Why shouldn't he be given an opportunity to amend, given that he was pro se and he didn't have any opportunity to amend? You're correct, Judge Saini. He was not given an opportunity to amend, but the – a couple of reasons. First of all, he does not dispute that there was a default in his obligation. That's a separate issue from TILA. It is a separate issue, but the reason it's relevant is the rationale that he presented for requesting the information was that he wanted to potentially negotiate for a modification of his loan or other foreclosure alternatives. This was not a claim against the validity of the loan. This was not a claim that there were disclosure violations. It was simply an attempt to essentially save the note and try to save the home. That is a discussion that he could have had independent of the information as to who holds the note. He had the ability all throughout the period that he was in default servicing to request that type of assistance, but instead he chose to request the information under the Act, and if that allegation is in fact proved, you know, if the court demands and that allegation is in fact proved, he would not have any enforceable rights out of it because, again, under the Truth in Lending Act, Countrywide was not a servicer. It was, we would argue, not an SACME either, and certainly in this context under 1641F, it was a servicer, and TILA expressly excludes servicers from liability. What about a RESPA claim? And I think you raised it in your response brief. Yes, Judge St. Eve. We raised the RESPA, and the reason we raised it is because the claim was not made. Now, understand fully that this is a pro se plaintiff. However, the rules apply to pro se plaintiffs just as they apply to others, and if you look at his complaint, this was not an ill-informed complaint. Mr. Motza had quite a bit of knowledge, not only of the types of claims that could be potentially available to him, but also of legal authority. His complaint is a mix of factual allegation and legal analysis and legal briefing. So I think it was... Did he allege enough facts, even though he may not have said RESPA or cited the statute, did he allege enough facts to pursue a RESPA claim here? I don't think so, Your Honor. He alleged that he made a request for information under 1641 F2 that is a separate provision and has separate purposes from the qualified written request that we're familiar with under the RESPA context. He was not asking for, or actually was not even disputing, the terms of his loan. His stated purpose was that he wanted to speak with somebody to try and save the home. But when you get right down to it, as Judge St. Eve mentioned, I mean, if you look at the facts, he wanted some information. RESPA 2605E clearly would have required Countrywide to provide that information, would it not? I agree with that. And it was a private right of action against it had it failed to do so. I agree with those points, Your Honor. So under those circumstances, I mean, if you were sitting in this seat, you would appreciate how many times we liberally construe, particularly in prisoner cases and for that matter, pleadings to this Court asking for various things, and we say construing this as a whatever. We rule in such and so. But in this case, if you look at the facts that were pleaded by Mr. Mazza, he's not a lawyer. He's got a serious problem, a very serious problem that for him represents a huge amount of his well-being and probably his peace of mind. If he alleges the facts and cites the wrong act, isn't this the kind of a situation that we could appropriately send it back for amendment because he was a pro se litigant? We're supposed to construe it liberally. If he pled the same facts and cited RESPA, he'd be right on the money, wouldn't he? I think he would have to plead slightly different facts, Your Honor. Slightly, but not much. He'd have to say it was a servicer, not a creditor. He would also have to say that he had specific concerns about the terms of his loan, which he does not. He acknowledges, unlike many other borrowers in similar situations, he does not dispute that he has the obligation to make payments on the terms of that service. Apart from the, it's a completely separate purpose under RESPA. If we were to... But does a purpose matter? I believe it does, Judge Saini, because he is the master of his claim. I think... I like being the master of your ship. Yeah, he stated the reasons why he was suing, and he stated the reasons why he took the predicate act that became the basis of the suit, and that was he wants to save the home, and he wants to talk to the correct person. He's concerned that if he were simply to negotiate with Countrywide, that he would be negotiating with the wrong person, and so he wants to know who owns the note. Now, he should have negotiated directly with Countrywide. That's what he should have done, and he probably, there's nothing on the record to support this, but he probably knew that. After all, he had been making payments there. So, rather than... That seems a bit speculative if it's not in the record. I agree with that, Judge Gould. Okay, let me... Could I ask you a couple of questions that may be overly practical, so if they are, you could bring me back to the law. Sure. First of all, on TILA, if we decide, as Judge Smith suggested, that there's a problem with the statute of limitations ruling, and we think that was error, then you've said we can affirm on any ground supported by the record. That's obviously correct, but my question is, the practical question, am I right that that's a discretionary ground, so that we would have discretion either to affirm if there was some other ground supported in the record, or discretion to send it back to the district court and say, we're not going to rule on an issue you didn't address. So, if we reverse on the limitations, we just toss TILA back to you, and it's open, wouldn't we have discretion to do that? That's my practical question. I won't ask it as a leading question. Would we or would we not have discretion to do that? Not as a leading question, Judge Gould. I would agree, if that were your position, that the court does have discretion. The precedent does not read mandatorily. However, we believe that the court should use that discretion in favor of affirming the court's decision below. I understand. Okay, my second question is this, and this one's maybe on your side of the case. Let's just assume for a minute that we take your suggestion and we look at TILA and we say, even if this ruling was an error, that there's no TILA claim on other issues and we're not sending it back and TILA's gone, and let's assume that we decide that we cannot want to exercise the discretion Judge Smith and Judge St. Evop asked about to construe the pro se complaint as a RESPA claim. Let's assume we reject all that and TILA and RESPA are out. There are still state law claims, correct? So what would happen to the state law claims, assuming that we ruled for you on all the federal law claims? Judge Gould, the district court dismissed all of the state law claims as well, so that would be affirmed as well. This was the final judgment even on the state law claims. Did he dismiss them on the merits? Yes. Okay. Do we know that? The district court didn't address the state law claims. I believe Judge Mahan did address them, Judge St. Eve. If you'll excuse me, I'm going to grab my copy of this. Sure. There was a tort claim and an implied covenant of good faith and fair dealing claim that I do not believe were addressed. The court talks about that Mazda's allegations of breach of contract that those incorporate these various other state law claims. Is that what you're suggesting? Yes, Judge Smith. And we're again coming back to the pro se problem a little bit. The complaint is not very clear on when it's discussing legal theory and when it's actually stating a cause of action. But I think we can agree that he certainly tries to plead a breach of contract claim and tries to plead an implied covenant of good faith and fair dealing claim. He's not very clear on whether he's seeking that in port or in contract. Either way it would fail. But if you, starting on the top of page 2 of the order, it does address the claims that sound in contract, including the express contract claim as well as the implied covenant. And then at the bottom of the order, we haven't really discussed recontrast or merge here, but I think that's where the wrongful foreclosure part of this comes. He asserted that there were title-related problems arising from merge's alleged inability to be a nominee under the deed of trust. Those theories have been abandoned here on appeal. But the wrongful foreclosure did not contend that Countrywide or Recon Trust were foreclosing despite him being current on the note. It was all having to do with the alleged lack of standing on the part of Recon Trust and merge, and that's what's addressed at the bottom part of that case. So the fact that the court basically granted your motion to dismiss, you did detail all those other points, right? That was all, you know, we haven't submitted our motion, obviously as part of the excerpt, but yes, that was addressed to the district court. Okay. And so we believe that the order disposes of the state law claims on the merits, and so those are before this court as well. Okay. You've got about 30 seconds left. Do you have anything else you want to cover? Well, given that I have 30 seconds, I think the court understands the issue as well. I would just reiterate the point that this was a, as far as pro se plaintiffs go, a fairly sophisticated plaintiff. His complaint is actually decipherable, which stands in contrast to many pro se claims that we were dealing with at that particular time. And Mr. Matza had the opportunity to bring this as a rest of a claim, but he didn't do that, and there's really no reason for the court to use whatever discretion they may have to open that door now. Okay. Thank you very much. Thank you, Your Honor. Appreciate it. We'll have our student counsel, Ms. Mason, give us a rebuttal here. Ms. Mason, as part of your rebuttal, and if this takes extra time, perhaps Judge Smith could give you an extra minute, but what, in your appeal, what have you urged about the state law claims? That is, is that issue abandoned? Do you accept the dismissal? Or have you appealed the dismissal of those? Your Honor, we have appealed the dismissal of those claims because contrary to what appellees have asserted, the district court did not address the TOR claim, the breach of the implied warranty of good faith and fair dealing. Okay. And also, is your diversity jurisdiction established? If the federal claims were out, just assuming that, could you still be in federal court? Or would it be up to the discretion of the court whether it kept the state law claims? No, Your Honor. Assuming we reversed on a state law claim. No, Your Honor. Diversity jurisdiction has not been established. It was pleaded, and the district court asserted both grounds of jurisdiction, but it did not do a diversity analysis because of the presence of the federal question. But with regard to the... Was it challenged? Diversity wasn't challenged, was it?  But a course can be challenged at any time, right? Yes, Your Honor. So what do we do with that? If this court were to have questions with regard to diversity jurisdiction, it would be a question of fact that I believe would be most properly addressed. Let's just say hypothetically that at least for my part, I look at the state causes of action as having no merit whatsoever. We're really stuck with the federal questions. What should we do? This court should decide the merits of whether the Truth in Lending Act has an implied private right of action as it is within its discretion to do so under Moses H. Cone. So you're back to where we started. There's a certain symmetry to that. Yes, Your Honor. But I would briefly like to address some of the points raised by opposing counsel. First of all, as I mentioned earlier, the district court did not dismiss, did not decide the tort claim on the merits. The district court only said, as the record shows at page 4 and 5, laid out what claims it believed that Mr. Mazza had pleaded, which was a contract claim and it did not mention the tort claim. And it dismissed as to that claim. It was very explicit about dismissing on the breach of contract. And I see my time is about to elapse. We'll give you a little more time because Judge Gould had recommended it and he is the senior partner in this panel. Thank you very much. And I just would also like to address RESPA because Mr. Mazza should be given leave to amend as he was not given even one chance to amend. And he did plead facts that would give rise to a RESPA complaint. He did raise that? He did not raise it by name. No, to be clear. But from your perspective, if you look at the factual allegations in the complaint, if you substituted the name of the act, your view is that at least under a liberal construction because he's pro se that that would meet the requirements of RESPA. Is that the correct understanding? Yes, Your Honor. And the statute we'd be talking about here is 12 United States Code Section 2605E. And Mr. Mazza did plead the elements of that statute. He requested, he made a written request which I believe would qualify as a qualified written request for information from the servicer about the servicing of his loan. They had 60 days to respond. They did not respond. That would be a RESPA claim. Okay. Any other questions that the panel has? We thank you both. I have no questions but thank both counsel for excellent arguments. Thank you very much. Indeed. We really welcome the student participation and you can rest assured that you've done a fine job. So we hope you've enjoyed the experience. I understand you're in finals now too so you get extra points. I am, Your Honor. Very good. We will then submit the case of Mazza v. Countrywide Home Loans, Inc.
judges: St. Eve, Gould, Smith M.